**Robert Michael MOSES, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 16625.**

United States Court of Appeals
Eighth Circuit.

Dec. 28, 1961.

**622**

William O. Gray, Cedar Rapids, Iowa, for appellant.

William R. Crary, Asst. U. S. Atty., Sioux City, Iowa, for appellee. F. E. Van Alstine, U. S. Atty., Sioux City, Iowa, was with him on the brief.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

BECK, District Judge.

This appeal is from a conviction and sentence under a two count indictment charging the appellant with two violations of Sec. 1010 of Title 18, U.S.C.,[1] the provisions of which make it a crime to knowingly make or utter a false statement for the purpose of obtaining a loan to be insured by the Federal Housing Administration.

A compendium of the relevant facts portrays the acts incidents and transactions out of which the charge, conviction and sentence on the two counts arose.

Appellant was the owner of Modern Design, a home repairing and remodeling business in Sioux City, Iowa. The contracts for home improvements between Modern Design and home-owners principally resulted from direct solicitations of appellant and one Irving Satin.[2]

Testimony adduced by the Government under Count I of the indictment shows that during the latter part of December 1958, the appellant and two associates called at the home of a Mr. and Mrs. Maurice Bartlett and at that time entered into negotiations for a contract to make certain interior and exterior improvements on the Bartlett home. The need for such repair found the Bartletts not completely unreceptive. They informed appellant and Satin that they were currently burdened with other obligations and therefore somewhat reluctant to accept.

Countering that situation, the appellant made a proposal for a $3,300 single loan with $1,500 for the suggested improvements and the $1,800 excess for the borrowers' other obligations.

The Bartletts, having been thus assured, were then induced to sign certain papers, later proving to be no more than a blank contract with Modern Design and a form promissory note attached by perforation to a F. H. A. form credit application. These were then taken by the appellant and his said associates, thereafter filled in and completed, but not in the presence of the Bartletts and later delivered by the appellant to the Federal Home Savings and Loan Association[3] to close the loan aspect of the transaction.

Subsequent events reveal that only a portion of the work specified under the work order (contract) with Modern Design was completed; that the remainder of the repair items included in the contract had not been agreed on in the negotiations; that a completion certificate, nevertheless, was signed by the Bartletts at the instance of the appellant's associates and by his associate submitted to the lending agency for final payment; that Modern Design in the process by and through the expedients of having the Bartletts withdraw two checks against the Association loan account, one for $1,320, the other for $1,980, got all of the funds in that ac-

1. "Whoever, for the purpose of obtaining any loan * * * with the intent that such loan * * * shall be offered to or accepted by the Federal Housing Administration for insurance, * * * makes, passes, utters, or publishes any statement, knowing the same to be false, * * * shall be fined not more than $5,-000 or imprisoned not more than two years, or both."

2. Originally a co-defendant under the indictment, Satin entered a plea of guilty as charged and was sentenced to imprisonment.

3. A lending agency under a master contract with the F.H.A. for insuring loans.

count, with the Bartletts finally getting $290 from the appellant with the balance of the $1,800 entered only as a claim against the appellant's bankruptcy estate,[4] *he having listed the Bartletts as one of the creditors.*

The Government's case under Count II, under the evidence, shows a like pattern of facts, the home owner named in this Count being one George Wickey. There is this difference, a part of the $500 rebate he received was to cover work to be done by him under the contract. He too, at the instance of the appellant's associate, Satin, signed the completion certificate [5] before the work was done. Modern Design again by use of the same expedients got all of the loan proceeds ($3,500) from the Association loan account, net amount realized after payment of the rebate being $3,000.

Urged on appeal are three assignments of error, the ambit of which do not require a discussion of evidence adduced under the defendant's case.

At the commencement of the trial counsel for appellant moved the court that all Government witnesses be excluded from the courtroom until they were called to testify. Error is here predicated upon denial of this motion.

█ Sequestration of witnesses from the courtroom is a matter within the sound discretion of the trial judge. United States v. Postma, 2 Cir., 242 F. 2d 488 (1957) and Latses v. United States, 10 Cir., 45 F.2d 949 (1930). And this rule has clearly been espoused by the Eighth Circuit. Bunn v. United States, 8 Cir., 260 F.2d 313 (1958) and Hood v. United States, 8 Cir., 23 F.2d 472 (1927), cert. den. 277 U.S. 588, 48 S.Ct. 436, 72 L.Ed. 1002. In addition to the reason given by the trial judge in denying the motion, to-wit: that the court facilities were inadequate, further support is found in the fact that, except for the testimony of Mr. and Mrs. Bartlett, each of the witnesses testified to separate (though legally related) incidents giving rise to the substance of the charge. Also any influence the Bartletts may have had on each other certainly pre-existed the trial of the case. There having been no showing of an abuse of discretion, we find no grounds for reversal in denial of the motion.

Lillian Goldberg's testimony, admitted over objections urged as error and as a second point why the case should be reversed, relates to a F.H.A. remodeling loan transaction she had with the appellant in 1958 and a $600 rebate, he paid her in that case. She, however, did not sign a fraudulent completion certificate. Their negotiations which led to the completion of that transaction in other respects were much the same as the ones referred to in the indictment. They contemplated an F.H.A. loan large enough to cover the improvement, payment of other obligations of the borrowers, consolidation of their debts into one and the $600 rebate as a means to complete the entire transaction.

But, it is pointedly said, the appellant was charged and indicted for falsifying the completion certificate, the Goldberg testimony, therefore, had no place in the Government's effort to prove common intent and purpose. Less cogent is appellant's reminder that the rebate was neither asked for nor received until after the improvement had been completed by Modern Design. This aspect of the case, according to the appellant, constitutes prejudicial error.

█ It is a general rule that evidence of a crime for which an accused has not been charged in the indictment is inadmissible and constitutes prejudicial er-

---

4. Appellant's bankruptcy petition was filed in 1959.

5. The following is an excerpt from that certificate:
   " * * * I (we) certify that I (we) have not been given or promised a cash payment or rebate nor has it been represented to me (us) that I (we) will receive a cash bonus or commission on future sales as an inducement for the consummation of this transaction * * *."

ror. Brickey v. United States, 8 Cir., 123 F.2d 341 (1941); Paris v. United States, 8 Cir., 260 F. 529 (1919); Hubby v. United States, 5 Cir., 150 F.2d 165 (1945); Tedesco v. United States, 9 Cir., 118 F.2d 737 (1941); and MacLafferty v. United States, 9 Cir., 77 F.2d 715 (1935). But where intent and knowledge are essential in proving the offense charged, evidence of transactions so connected with the charge, Brickey v. United States, supra; Kempe v. United States, 8 Cir., 151 F.2d 680 (1945); Paris v. United States, supra, and evidence of other acts similar in nature tending to establish intent and guilty knowledge of the offense in issue, Brickey v. United States and Paris v. United States, supra, and Thomas v. United States, 8 Cir., 156 F. 897, 17 L.R.A.,N.S., 720 (1907), are two well established exceptions.

■ Appellant's objection to the Goldberg testimony, then poses the question, whether it is within those two. Realistically appraised, we find in it a showing of instigations by the appellant and his associates of a scheme which in all material respects is like the ones referred to in the two Counts and one which entails numerous steps, essentially fraudulent, and designed to effect acts specifically prohibited under the Act.

It is true as said in United States v. Eury, 2 Cir., 268 F.2d 517, at 520 (1959):

"One cannot be convicted under 18 U.S.C. § 1010 for inadvertently making a mistaken certification; on the contrary in order to convict it must be shown that defendant's false statement was knowingly made. * * * "

The Goldberg testimony, within the rule in that case, showed knowledge of the character and nature of the transaction essentially like the ones referred to in the indictment. We deem it not prejudicial error, inasmuch as the jury under the trial court's instruction [6] was informed of its proper application.

Finally, the appellant raises and argues the point that:

"The Trial Court Erred in Failing to Sustain Appellant's Motion for Acquittal in That the Evidence Introduced by the Government Failed to Prove the Defendant Wilfully Made, Passed, Uttered or Caused to Be Made False Statements Which Defendant Knew to Be False, to the Home Federal Savings & Loan Association with Regard to a Home Improvement Loan Submitted to the Federal Housing Administration.",

and asserts in the process that:

"It was necessary for the Government to prove by its evidence the actual commission by the defendant of the particular crime charged in the indictment. It is the position of the Appellant that from the record and the evidence introduced, the Government fell far short of proving the corpus delicti. One cannot be convicted under 18 U.S.C., Section 1010, for inadvertently making a mistaken certificate—on the contrary, in order to convict it must be shown that defendant's false statements were knowingly made."

Syllogistically, he concludes:

"Both of the indictments against this Appellant are based on the falsification of the completion certificates and the Government must prove the Appellant knew the certificates to be false. How could this be true when he did not make them out, or was not present when they were signed?"

The Government, replies, as it in that connection submits that "conflicts in evi-

---

6. " * * * The Government has presented evidence as to a transaction with Mr. and Mrs. Goldberg which it claims is similar in character. Such evidence is to be considered by you for such bearing as it might have, if any, upon the intent, motive and purpose of the defendant in connection with the two Counts for which he is on trial and for no other purpose."

dence are to be resolved in favor of the prosecution on appeal":

> "The record shows that in the Wickey and Bartlett transactions the defendant went to the purchasers' homes and discussed with them the purchase of siding. In order to make application for a loan it is necessary to list debts of the borrower. In each case the borrower had debts he wanted to satisfy to purchase the siding. Each borrower testified that the defendant told him he could provide enough money for him to satisfy his debts. These debts were not listed on the application for the loan. The borrowers signed papers in blank and eventually signed a 'Completion Certificate' stating they had not received a rebate or promise of a rebate. In each case the borrowers identified the defendant as having promised them the refund. Although his co-defendant, Mr. Satin, was present and may have filled out the application forms for the loan, it seems clear from the Government's evidence that the defendant was the person who made the arrangements with Home Federal Savings and Loan Association to obtain Federal Housing Administration loans, and it was his acts which led to the borrowers signing a false 'Completion Certificate'.

> "The borrowers' testimony indicates they were confused, misled and without knowledge of the true nature of the enterprise they were engaged in. It is also clear that in each case they would not have agreed to the contract for siding unless the defendant promised them sufficient money to pay their outstanding obligations".

It is to be conceded that appellant's nexus to the making, passing and uttering of the fraudulent completion certificates did not arise from a showing that he was the ultimate procurer of the premature signatures of the borrowers; that he was present when they were signed or that he was the party who submitted them to the Loan Association for final payment. His connection to the specific offense is to be found only in those related acts which preceded and succeeded the specific act charged. The Government's case must stand or fail upon the legal sufficiency of that showing.

The indictment specifically charges the appellant on two Counts of knowingly making, passing, uttering and publishing and causing to be made, passed, uttered and published false statements in two "Completion Certificate(s) for Property Improvement Loan(s) (under FHA Title I) ".

■ But the trial court instructed [7] the jury:

> " * * * A person who knowingly and wilfully aids, abets, counsels or induces or procures the making, uttering, or publishing of such a statement for such purpose is also guilty of that offense * * * ",

which instruction with subsequent ones [8] are in accord with the authorities and

---

7. Trial court's Instruction No. 4.

8. Instruction No. 7:
"In order to convict the defendant on Count I of the Indictment, the burden is upon the Government to establish beyond a reasonable doubt that at Sioux City, Woodbury County, Iowa, on or about January 2d, 1959, for the purpose of obtaining a loan for Maurice Dale Bartlett and Ruth Maxine Bartlett from Home Federal Savings and Loan Association, with intent said loan be offered to and accepted by the Federal Housing Adminis-

tration, he knowingly and wilfully caused to be made, passed, uttered or published false statements, knowing the same to be false, in a 'Completion Certificate for Property Improvement Loan (under FHA Title I)', said Certificate being false in that it stated the borrowers had not been given or promised a cash payment or rebate, when in truth and in fact the borrowers had been promised a cash payment of approximately $1,800.
"If the Government has so established, you should find the defendant guilty on Count I. If it has not so established,

cases and Section 2(a) of Title 18 U.S.C.A., which provides:

> "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.",

and Section 2(b) of the same Title:

> "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal".

The following cited cases support the view that the appellant under that section need not be present at the time of the offense charged. Aaronson v. United States, 4 Cir., 175 F.2d 41; United States v. Amorosa, 3 Cir., 167 F.2d 596; Shockley v. United States, 9 Cir., 166 F.2d 704, cert. den. 334 U.S. 850, 68 S.Ct. 1502, 92 L.Ed. 1773. Implicit, also, in its provisions is the further fact that a party need not be the actual perpetrator of the offense.

■ It is enough if the party participates, as did the appellant in these cases, in the concerted plan permeating each of the transactions out of which these certificates emanate.

In point is Judge Hand's statement in United States v. Chiarella, 2 Cir., 184 F.2d 903, at 909 (1950):

> " * * * 'causing an act to be done' covers any acts which are necessary steps in the events that result in crime; and that is equally true *pro tanto*, though we limit the steps to those which the actor knows to be likely so to result; for, even with that limitation there are many

situations in which one may 'cause' the crime * * *."

And again from the same jurist in United States v. Paglia, 2 Cir., 190 F.2d 445, at 448 (1951):

> " * * * the crime must be a fulfillment in some degree of an enterprise which he has adopted as his; his act must be in realization of his purpose."

Even more conclusive is the statement in Nye & Nissen v. United States, 336 U.S. 613, at 619, 69 S.Ct. 766, at 770, 93 L.Ed. 919:

> "There is no direct evidence tying Moncharsh to the six false invoices involved in the substantive counts. Yet there is circumstantial evidence wholly adequate to support the finding of the jury that Moncharsh aided and abetted in the commission of those offenses. Thus there is evidence that he was the promoter of a long and persistent scheme to defraud, that the making of false invoices was a part of that project, that the makers of the false invoices were Moncharsh's subordinates, that his family was the chief owner of the business, that he was the manager of it, that his chief subordinates were his brothers-in-law, that he had charge of the office where the invoices were made out."

See also United States v. Peoni, 2 Cir., 100 F.2d 401 (1938); Kummer v. United States, 6 Cir., 148 F.2d 191 (1945) and Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114.

The motion for acquittal was properly denied.

Affirmed.

you should acquit the defendant on Count I."

Instruction No. 8 is essentially the same, except that it is made to apply to Count II of the indictment.