**UNITED STATES of America**

v.

**Louis H. HEITHAUS and Sheldon Selikoff.**

**Sheldon Selikoff, Appellant.**

**No. 15961.**

United States Court of Appeals Third Circuit.

Argued Jan. 16, 1967.

Decided April 10, 1967.

Michael A. Querques, Orange, N. J. (Harvey Weissbard, Orange, N. J., on the brief), for appellant.

Jerome D. Schwitzer, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before HASTIE, GANEY and SEITZ, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

This is an appeal by Sheldon Selikoff, one of several defendants, from a conviction of willfully making and publishing, or causing to be made and published, false statements for the purpose of obtaining Federal Housing Association insured home improvement loans, in violation of section 1010 of Title 18, United States Code. The indictment contains several counts based upon various misrepresentations in loan applications by different borrowers. The court imposed a fine of $1,000 on one count and a suspended sentence with probation for two years on the other counts. On this appeal Selikoff complains that the proof was insufficient to take the case to the jury and that certain statements in the prosecutor's summation constituted reversible error.

Each loan resulted from essentially the same sequence of events. A co-defendant, Racanelli, published a series of advertisements in a White Plains, New York, newspaper soliciting the business of would-be applicants for home improvement loans. The co-defendant would take or send the person who answered the advertisement to Selikoff. Selikoff then asked the prospective borrower questions to obtain information necessary or ap-

propriate for inclusion in a loan application and, as answers were given, he made notations on what was described as a "work sheet". In addition, he had the applicant sign a blank application form. There was evidence that the application, thus signed in blank, and the "work sheet" were then sent to a Michael Goldberg who completed the application and transmitted it to a lending bank. In each case covered by the indictment the completed application contained information substantially different from that which the borrower had given Selikoff with reference to the borrower's circumstances or the purpose for which the loan was desired.

The bank made each loan by delivering to Goldberg a check payable to the borrower for the amount of the loan. The amount loaned was $3,500 in each case covered by this indictment. When the check reached Selikoff or his business partner Heithaus, one of them would deliver it to the borrower, at the same time requiring the borrower to pay him a fee of $600. There was evidence that $100 of each fee was distributed to Racanelli, $125 to Goldberg and the remaining $375 retained by Selikoff and his business partner.

Selikoff contends that this evidence was insufficient to justify a finding that he was party to or knowingly aided and abetted [1] the inclusion of false statements in the loan applications. We find no merit in that contention. Selikoff's conduct in charging a very large, indeed legally excessive, fee for obtaining each loan, his division of the fee with Goldberg, and his retention of most of the fee for himself and his partner, all are some indication that he was party to a scheme of misrepresentation with Goldberg who actually inscribed the false statements in the loan applications. This inference is strengthened by the consideration that no legitimate business reason appears to explain Selikoff's consistent failure to write the correct infor-

---

1. Unquestionably, proof of aiding and abetting will sustain an indictment charging the substantive offense in question. Cf.

United States v. Provenzano, 3 Cir., 1964, 334 F.2d 678, cert. denied 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544.

mation in the application form before signature by the applicant or at least before forwarding it to Goldberg. Moreover, in some cases the information given Selikoff by the prospective borrower was such as to indicate to a person in the business of handling such transactions that the loan application could not qualify for favorable action. Yet he made no mention of this to the applicant but passed the papers on to Goldberg for completion and submission. These facts considered, a jury could reasonably have been convinced of Selikoff's guilt. We are satisfied that the trial judge properly denied Selikoff's motions for acquittal at the end of the government's case and at the end of the entire case. Cf. United States v. Oberman, 4th Cir., 1936, 318 F.2d 877; Cohen v. United States, 6th Cir., 1949, 178 F.2d 588.

The appellant's second point concerns an allegedly prejudicial statement in the prosecutor's summation. In argument to the jury, defense counsel had stressed the fact that certain prosecution witnesses who testified to transactions with Selikoff's co-defendant and partner, Heithaus, were unable to identify him in the courtroom. Replying to this argument, the prosecutor reminded the jury that the witnesses had not seen Heithaus for five years and then added: "But that doesn't detract from the truthfulness of their statements because * * * were any of these witnesses contradicted in any way? Was their testimony attacked so as to render their testimony incredible, unbelievable?"

The appellant construes this statement, to which counsel objected, as a comment on, or a suggestion that an unfavorable inference be drawn from, the failure of Heithaus to testify. The court refused to direct a mistrial, but gave the jury a full and proper instruction upon their duty to refrain from drawing any unfavorable inference from the failure of any defendant to testify.

 The gratuitous demeaning of a criminal defendant's case by inviting a jury to draw an unfavorable inference from his failure to testify is proscribed as "a penalty * * * imposed * * * for exercising a constitutional privilege". Griffin v. State of California, 1956, 380 U.S. 609, 85 S.Ct. 1229, 14 L. Ed.2d 106. But that is not what occurred here. By deliberate choice the defense focused attention upon the credibility of certain witnesses for the prosecution and urged the jury to disbelieve them. The prosecutor then did no more than rebut this attack upon his evidence by reminding the jury in general terms that the testimony in question was uncontradicted and unimpeached. Such comment was a fair rejoinder that had been invited by the defense. If some juror was thus reminded that the defendant had not testified, the court's subsequent instruction concerning the jury's duty to disregard the failure of the accused to testify minimized the risk of inferring guilt from such failure. On the facts of this case, the defendant was entitled to no more. Cf. United States v. Johnson, 4th Cir., 1964, 337 F.2d 180, aff'd on other grounds, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681; Knowles v. United States, 10th Cir., 1955, 224 F.2d 168.

The judgment will be affirmed.