**UNITED STATES of America**

v.

**Louis H. HEITHAUS and Sheldon Seli-
koff, Louis H. Heithaus, Appellant.**

**No. 16427.**

United States Court of Appeals
Third Circuit.

Argued Feb. 5, 1968.

Decided March 27, 1968.

Robert J. McGuire, Phillips, Nizer,
Benjamin, Krim & Ballon, New York
City (Philip J. Ryan, New York City,
on the brief), for appellant.

Jerome D. Schwitzer, Asst. U. S.
Atty., Newark, N. J. (David M. Satz, Jr.,
U. S. Atty., Elliot Scher, Asst. U. S.
Atty., Newark, N. J., on the brief), for
appellee.

Before HASTIE, Chief Judge, and
FREEDMAN and VAN DUSEN, Cir-
cuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

Louis Heithaus is here appealing from
his conviction on two counts of an indict-
ment wherein he was charged with know-
ingly making or causing to be made false
statements for the purpose of obtaining
bank loans insured by the Federal Hous-
ing Administration, in violation of Sec-
tion 1010 of Title 18, United States Code.
Each count was based upon a different
loan but both involved the same alleged
wrongdoers and the same alleged scheme
of operation.

Three defendants were convicted in a
single trial. Two of them, Heithaus and
Sheldon Selikoff, owned and conducted
the affairs of a small corporation en-
gaged in the business of finding prospec-
tive borrowers and assisting them in
obtaining F. H. A. insured loans. The
conviction of Selikoff was appealed to
this court and affirmed in United States
v. Heithaus and Selikoff, 3d Cir. 1967,
377 F.2d 484. We now consider the sep-
arate appeal of Heithaus on the same
trial record that we reviewed on Seli-
koff's earlier appeal.

The principal contention of Heithaus
is that the record contains no evidence
that he had knowledge that false state-
ments were made or contemplated such
as would justify submitting the case
against him to the jury. Accordingly,
we have reviewed the evidence with care.

We have reconsidered and now repeat
as fully warranted by the present rec-
ord the following statement of relevant
events as set out in our Selikoff opinion:

"Each loan resulted from essentially
the same sequence of events. A co-
defendant, Racanelli, published a series
of advertisements in a White Plains,
New York, newspaper soliciting the
business of would-be applicants for
home improvement loans. The co-de-
fendant would take or send the person
who answered the advertisement to

Selikoff. Selikoff then asked the prospective borrower questions to obtain information necessary or appropriate for inclusion in a loan application and, as answers were given, he made notations on what was described as a 'work sheet'. In addition, he had the applicant sign a blank application form. There was evidence that the application, thus signed in blank, and the 'work sheet' were then sent to a Michael Goldberg who completed the application and transmitted it to the lending bank. In each case covered by the indictment the completed application contained information substantially different from that which the borrower had given Selikoff with reference to the borrower's circumstances or the purpose for which the loan was desired.

"The bank made each loan by delivering to Goldberg a check payable to the borrower for the amount of the loan. The amount loaned was $3,500 in each case covered by this indictment. When the check reached Selikoff or his business partner Heithaus, one of them would deliver it to the borrower, at the same time requiring the borrower to pay him a fee of $600. There was evidence that $100 of each fee was distributed to Racanelli, $125 to Goldberg and the remaining $375 retained by Selikoff and his business partner." 377 F.2d at 485.

It will be observed that the falsification upon which this conviction is based is evidenced by serious discrepancies between information loan applicants supplied orally to Selikoff and the data Goldberg inserted in application forms signed in blank by the applicants at Selikoff's request. It does not appear that Heithaus participated in this process of preparing loan applications either in the cases involved in this indictment or in any others. In his testimony he described his role as that of making contacts with lending institutions and obtaining credit reports on prospective borrowers. He did admit knowledge of the procedure under which Selikoff obtained the signatures of borrowers on blank loan application forms and forwarded these, with information supplied by the borrowers, to Goldberg for the completion of the applications and their submission to the lending institutions. He added that this was done at Goldberg's request.

Heithaus also knew that he and Selikoff were charging large fees for successfully arranging for loans and that they were sharing these fees with Goldberg. In the case upon which one count is based, he collected the fee.

■ In Selikoff's appeal, we pointed out that "in some cases the information given Selikoff by the prospective borrower was such as to indicate to a person in the business of handling such transactions that the loan application could not qualify for favorable action. Yet he made no mention of this to the applicants but passed the papers on to Goldberg for completion and submission." This indication of guilty complicity in a fraudulent scheme is lacking in the case of Heithaus who is not shown to have known what data any applicant supplied. All that appears is that Heithaus knew forms signed in blank were being forwarded with relevant information to Goldberg for completion. From this fact and the additional fact that he knew how much applicants were charged and how the money was divided, it is arguable that his participation was such as to make a fact finder suspicious that he may have known more than the record shows. But suspicion falls short of proof beyond reasonable doubt.

■■ The evidence of Selikoff's guilty complicity in preparing false applications, though not overwhelming, was in our judgment sufficient to make the issue a jury question. But the conviction of Heithaus required surmise such as cannot be permitted in a criminal case.

The judgment will be reversed.

VAN DUSEN, Circuit Judge (dissenting in part).

I dissent, respectfully, from that part of the majority opinion reversing the

April 20, 1966 judgment of conviction on Count II of the indictment. I believe there was sufficient evidence to justify the jury in finding beyond a reasonable doubt that appellant knowingly aided and abetted[1] in a scheme involving the making or passing of loan applications containing false statements, including the application of Mullanes, as charged in Count II of the indictment, in violation of 18 U.S.C. § 1010. In addition to appellant's knowledge of the scheme being used by Goldberg, his partner, Selikoff and others as stated in the majority opinion, he admitted that he and Selikoff were the officers of a two-man corporation, that they exchanged "offices back forth" and that he introduced borrowers such as the Mullanes to Goldberg. Appellant took the Mullanes to the White Plains bank, indorsed the $3500 check which had been drawn to the order of the Mullanes and had that bank issue a $2900 check to the Mullanes and pay $600 to him or his firm showing that he knew of the $600 commission being taken out of the $3500 loan. As stated in United States v. Heithaus, 377 F.2d 484, 485 (3d Cir. 1967),

> " [Appellant's] * * * conduct in charging a very large, indeed legally excessive, fee for obtaining each loan, his division of the fee with Goldberg, and his retention of most of the fee for himself and his partner, all are some indication that he was party to a scheme of misrepresentation with Goldberg who actually inscribed the false statements in the loan applications."

As the court said in Moses v. United States, 297 F.2d 621, 626 (8th Cir. 1961), where an order denying a motion for judgment of acquittal in a prosecution under 18 U.S.C. § 1010 was upheld,

> "it is enough if the party participates, as did the appellant in these cases, in the concerted plan permeating each of the transactions out of which these certificates emanate."

I would affirm the April 20, 1966 judgment of conviction on Count II of the indictment and reverse the judgment of conviction on Count IV of such indictment.

United States v. Carlson, 359 F.2d 592, 597 (3d Cir. 1966), cert. denied sub nom. Bonomo v. United States, 385 U.S. 879, 87 S.Ct. 161, 17 L.Ed.2d 106 (1966). United States v. Russo, 123 F.2d 420, 421–422 (3d Cir. 1941).

---

1. In U. S. v. Heithaus, supra, 377 F.2d at 485, Chief Judge Hastie said (footnote 1): "Unquestionably, proof of aiding and abetting will sustain an indictment charging the substantive offense in question." The evidence must be viewed in a light most favorable to the Government. See