UNITED STATES of America

v.

William NEZOWY.

Crim. No. 81–00017.

United States District Court, E.D. Pennsylvania.

Dec. 17, 1982.

Elizabeth Ainslie, Mary Spearing, Asst. U.S. Attys., Philadelphia, Pa., for the Government.

Natale F. Carabello, Jr., Stephen S. Pennington, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

William Nezowy was convicted of three counts of making false statements to the Immigration and Naturalization Service (INS) in violation of title 18, United States Code, section 1001.[1] His post-trial motions contend there was insufficient evidence to support his conviction, the acts charged do not constitute a crime, and that there was error in pre-trial and trial rulings. For the reasons which follow, his motions must be denied.

Viewed in a light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the evidence showed that William Nezowy, fluent in the Polish and Ukranian languages and a self-proclaimed expert in immigration matters, filed political asylum applications on behalf of three aliens who did not authorize him to do so. Through his association with religious groups, Polish-American clubs, and Polish persons in the community, Nezowy came into contact with Polish nationals who had overstayed their visas and desired to remain in the United States permanently.[2] After speaking with these aliens and explaining that he had expertise in immigration matters, Nezowy would offer his services for a fee of approximately $2000.[3] Having been convinced that Nezowy could help with immigration problems, an alien would schedule an interview with Nezowy to discuss, *inter alia,* the alien's immigration status, occupation, and other personal data.[4] During the interview, Nezowy would delineate the options available to the alien under immigration law to enable him to stay in the United States.

1. Title 18, United States Code, section 1001 states in its entirety:

   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

   Nezowy was charged in a 21 count indictment which included 11 counts under 18 U.S.C. §§ 1001 and 2, and 10 counts under 18 U.S.C. § 1422 (1976), unlawful receipt of monies in proceedings relating to the registry of aliens. Ten counts were voluntarily dismissed by the Government. Nezowy was found not guilty as to eight of the 11 counts submitted to the jury.

2. Adjustment in status to that of being an alien lawfully admitted to the United States for permanent residence is something less than citizenship, but more than that of refugee or mere visitor. For a more detailed explanation of the rights and obligations of an alien so situated see the Immigration and Nationality Act (INA) § 244(a), 8 U.S.C. § 1254(a) (1976); *Chadha v. INS,* 634 F.2d 408 (9th Cir.1980), *cert. granted,* 454 U.S. 812, 102 S.Ct. 87, 70 L.Ed.2d 80 (1981); *Brathwaite v. INS,* 633 F.2d 657 (2d Cir.1980); *Tovar v. INS,* 612 F.2d 794 (3d Cir. 1980).

3. As stated in note 1, *supra,* Nezowy was charged in 10 counts of unlawfully receiving monies in proceedings relating to the registry of aliens in violation of 18 U.S.C. § 1422 (1976). Code of Federal Regulation title 8, part 292 states that only attorneys and certain other specified groups of individuals can charge a fee for representation of an alien at INS proceedings. 8 C.F.R. § 892.1 (1980). The Government's theory of prosecution was that Nezowy, who neither was an attorney nor a member of the specified groups, was representing aliens at INS hearings for a fee. Evidence in support of this theory was that Nezowy collected a very high fee for a simple procedure, forged the name of Louis Konowal, Esquire, on entry of appearance forms in matters for which Nezowy appeared at hearings as "interpretor" that Konowal was paid $100. for each such case, that Konowal testified Nezowy was not an employee of his or in association with him, and that Nezowy, at times, held himself out to aliens as an attorney. Contrariwise, Nezowy testified that he was associated with Konowal in an immigration practice, that the aliens were Konowal's clients and not his, and that he collected the fee on behalf of Konowal. Nezowy was not convicted on any of these counts.

4. Frequently, the alien was required to give his passport and visa to Nezowy.

One of the options was political asylum. The aliens, in whose names existed fraudulent political asylum applications, testified that they never authorized Nezowy to file for political asylum, and rather, directed Nezowy not to do so because they thought it would prevent their visiting Poland in the future.[5] Despite these instructions, Nezowy would fill out a political asylum application, submit it to the INS, and await the scheduling of a hearing at which the alien would first reaffirm the responses given on his application and then sign it. Once signed, the application was submitted for further processing, and the alien received an authorization for employment.

The falsity, that a particular alien was requesting political asylum, was compounded by a cover-up scheme devised and effectuated by Nezowy, and carried out by him at the INS hearing. Because each alien spoke little or no English, Nezowy, acting as interpreter, accompanied him to the hearing to translate the examiner's questions into Polish, and the alien's answers into English. In view of the fact that the alien did not know that the purpose of the hearing was to review his application for political asylum, Nezowy's translations to the alien avoided all reference to the word or subject of asylum. Similarly, so as not to contradict the information provided on the application, Nezowy translated the alien's answers to the examiner to show a request for asylum. Having successfully duped the INS examiner and the alien, Nezowy, at the behest of the examiner, directed the alien to sign the application. It can be inferred from the testimony of Edward H. Skerrett, an INS employee and the Government's expert, that Nezowy chose to pursue political asylum on behalf of aliens because it was easy and quick to get, allowed the aliens to work in the United States, and, as a practical matter, was granted as a matter of course to aliens whose former residences were communist bloc nations. N.T. 1:98–99.

After receiving several complaints regarding Nezowy's practices from his alien clients,[6] the Government summoned Christina Bankovic, a Polish speaking INS employee to act as examiner. Ms. Bankovic testified that at the hearing regarding the political asylum applications of Bozena Lapinska and Anna Lonczak, in May, 1980, Nezowy did not translate any questions put to the aliens to include the words or ideas of asylum or political asylum, although Ms. Bankovic specifically used those words and ideas in her questions. N.T. 6.21 to 6.29. Additionally, Ms. Bankovic testified that at a similar hearing of Khristoff Kwiatowski, Nezowy translated the term political asylum properly. N.T. 6.29. Nezowy's scheme having been uncovered, INS agents set out to interview aliens for whom Nezowy had filed political asylum applications. In several instances, INS agents were told by the aliens that they never authorized Nezowy to file applications for political asylum on their behalfs, and rather, specifically directed him not to do so.

Arguing that I erred in not granting judgment of acquittal, Nezowy contends that the applications for political asylum contained no falsities, that all the aliens qualified for political asylum, and that he was operating under a broad grant of authority for each alien.[7] Additionally, Ne-

5. Whether the aliens actually would be prevented from visiting Poland by virtue of having filed for political asylum in the United States is irrelevant.

6. Several alien clients of Nezowy learned much to their surprise, that political asylum applications were pending in their names, or that they already had been granted political asylum.

7. In addition, Nezowy contends I erred in refusing his numerous motions to dismiss based on the following grounds: 1) lack of specificity of the indictment; 2) violation of the attorney-client privilege; 3) improper joinder; 4) reliance on expert's advice; 5) selective prosecution; 6) pre-indictment delay; 7) violation of defendant's right to a speedy trial; and 8) governmental misconduct. Without reiterating the reasoning employed in analyzing each motion, suffice it to say that Nezowy's motions were denied properly. Nezowy's motion to dismiss for Government misconduct during the investigation and grand jury proceedings, however, warrants some discussion. Submitting letters and affidavits in support of his contentions, Nezowy sought a pre-trial evidentiary hearing,

zowy asserts that as a matter of law, his conviction cannot stand due to the absence of verbatim transcripts of the INS hearings and because the alleged false statements were not made to a Government official with final authority to act on the aliens' applications for political asylum.[8]

■ Nezowy's contentions are meritless and demonstrate that he completely ignores the gist of the falsity with which he was charged. The falsity proved by the Government was Nezowy's representation that a particular alien was seeking political asylum, which Nezowy knew was untrue, and that the alien intended that the application he was filing was for political asylum, which Nezowy also knew was untrue. Therefore, the fact the applications contained some true information and that the aliens actually qualified for political asylum is irrelevant. The falsity here was the unauthorized request for asylum itself. Furthermore, Nezowy's contention that he filed the applications under a broad grant of authority from the aliens was a question of fact resolved by the jury in Nezowy's favor as to certain aliens and against him as to others. The circumstances of this case are similar to *Gilbert v. United States,* 359 F.2d 285 (9th Cir.), *cert. denied,* 385 U.S. 882, 87 S.Ct. 169, 17 L.Ed.2d 109 (1966), where the defendant, an accountant who acted for others in federal income tax matters, was charged with violating 18 U.S.C. § 1001 because he forged endorsements on tax refund checks of his clients with the client's name "by R. Milo Gilbert, Trustee." Arguing that his conviction could not stand, Gilbert asserted that no falsity was involved because the endorsements were precisely what they purported to be. Rejecting Gilbert's contention and upholding his conviction, the United States Court of Appeals for the Ninth Circuit stated the falsity involved was that defendant's "endorsements themselves constituted representations that he was duly authorized to make them." Id. at 286. Similarly, here, Nezowy's filing of the political asylum applications on behalf of various aliens constituted representations that he was authorized to do so and the aliens desired political asylum. Because each alien on whose behalf Nezowy filed a fraudulent political asylum application testified that she did not authorize him to do so and that until the INS informed her that such an application existed she had no knowledge of it, the jury doubtless concluded that Nezowy acted without the aliens' authority. Nezowy's falsehoods, therefore, were that he had authority when in fact he did not, and that the aliens wanted political asylum when in fact they did not. Nezowy's conviction cannot be disturbed.[9]

discovery regarding the issue, and dismissal of the indictment. After examining the grand jury transcript *in camera* and the material submitted with the motion, I concluded that no misconduct had occurred as to any person mentioned in the indictment, or in the grand jury. See Docket Entry 42. Thus, the requests for discovery were refused. Additionally, although I concluded that a pre-trial evidentiary hearing was unwarranted, I agreed to hold a hearing post-trial and authorize discovery to give Nezowy an opportunity to establish the government misconduct which he had alleged. *United States v. Marcello,* 508 F.Supp. 586, 590–94 (E.D.La.1981); see *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978) (examining allegations of government misconduct only after full record developed at trial). A post-trial hearing was scheduled for January 14, 1981. Choosing to rely on the trial record and the materials submitted pretrial, Nezowy requested that the hearing be cancelled. On the full record now before me, my view is unchanged; there was no government misconduct here.

Therefore, it was not error to refuse Nezowy's motion to dismiss and request for discovery.

8. Nezowy also contends his conviction cannot stand because he did not benefit from the alleged false statements. Because there is no requirement that the Government prove Nezowy stood to benefit from the false statements, Nezowy's argument is meritless. Contrariwise in this regard, the Government need only have proved, *inter alia,* that the false statements were made to induce action or reliance by the INS. *United States v. Adler,* 623 F.2d 1287, 1291 (8th Cir.1980); *United States v. East,* 416 F.2d 351, 353 (9th Cir.1969). Clearly, the purpose of the false statements here was to induce favorable action on the aliens' applications for political asylum.

9. Nezowy's objection at trial to the relevance of the testimony of the aliens as to the extent of authority given to Nezowy was clearly without merit. The question of authority was the key issue in the case.

Nezowy's legal arguments that his conviction cannot stand due to the absence of verbatim transcripts of the INS hearings and because the INS examiner to whom the alleged false statements were made did not have final authority to act on the political asylum applications, similarly are without merit. *United States v. Ehrlichman,* 379 F.Supp. 291 (D.D.C.1974) and *United States v. Levin,* 133 F.Supp. 88 (D.Col.1953), cited by Nezowy in support of his argument, are inapposite. The facts of both cases involved alleged oral false statements to F.B.I. agents who were conducting criminal investigations. In each case, no violation of 18 U.S.C. § 1001 was found because the circumstances of the false statement were that the defendant was not under oath, was under no legal obligation to speak, and was not sufficiently alerted to the danger that the false statement could lead to prosecution. *Ehrlichman, supra,* 379 F.Supp. at 292. The cases held that in order to prosecute a person under 18 U.S.C. successfully for false statements under those circumstances, there must be a verbatim transcript of the interview and the statement must be made to a government officer with final authority to dispose of the matter being investigated.[10] *Ehrlichman, supra; Levin, supra,* 133 F.Supp. at 91. As stated above, the circumstances and the false statements in this case are totally different from *Ehrlichman* and *Levin.* First, this case does not involve a false statement made to someone conducting an investigation but a false statement made to an agency of the United States in conjunction with an affirmative application to that agency. Second, the whole purpose of the application procedure was to establish the truth of certain facts on the basis of which an alien would be allowed or would be denied permission to stay in the United States. No one could have reasonably supposed that truth was not the essence of the application procedure. Third, Nezowy was not prosecuted for making false statements at the INS hearings but because he misrepresented what aliens wanted and were trying to accomplish. Finally, if the *Ehrlichman* and *Levin* doctrine was found to control agency proceedings like those of the INS, or countless other agencies and the multitudes with whom they deal, government, as we know it, simply could not function with any semblance of efficiency, dispatch, or integrity. *United States v. Stanford,* 589 F.2d 285, 297 (7th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *United States v. Rose,* 570 F.2d 1358, 1363 (9th Cir.1978); *United States v. Krause,* 507 F.2d 113, 117–18 (5th Cir.1975); *United States v. Bedore,* 455 F.2d 1109, 1111 (9th Cir.1972). Accordingly, neither a verbatim transcript of the INS hearings, nor a statement to an officer with final authority was necessary here.

For the reasons stated above, Nezowy's post-trial motions must be denied.[11]

---

**10.** Defendant's reliance on *United States v. Glantzman,* 447 F.2d 199 (3d Cir.1971) is misplaced.

**11.** Nezowy's objection to the introduction at trial of certain tape recorded conversations is meritless. The tape recordings were made at the request or direction of an investigative or law enforcement officer and with the consent of at least one party to the communication. 18 U.S.C. § 2511(2)(c) (1982); 18 Pa. C.S.A. § 5704(2)(ii) (Purdon 1978). Finally, Nezowy's contention that I erred in refusing his points for charge is meritless in view of the fact that he does not specify how the charge to the jury was incorrect or resulted in prejudice to him.