**LADREY et al. v. UNITED STATES.**

No. 9069.

United States Court of Appeals
District of Columbia.

Argued March 25, 1946.

Decided May 20, 1946.

Messrs. Joseph A. McMenamin and Robert I. Miller, both of Washington, D. C., for appellants.

Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Cecil R. Heflin, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and WILBUR K. MILLER and PRETTYMAN, Associate Justices.

WILBUR K. MILLER, Justice.

In October, 1943, the grand jury in the District Court of the United States for the District of Columbia indicted Dr. Henry M. Ladrey for criminal abortion alleged to have been performed on one Hazel Queenan. While that charge was pending against him, Dr. Ladrey and his wife, Eva W. Ladrey, were indicted jointly, in January, 1944, under Title 22, § 701, District of Columbia Code (1940),[1] it being charged that they had offered Hazel Queenan a bribe of $260 to refrain from testifying against Ladrey in the abortion case. Having been convicted of the attempted bribery, Dr. Ladrey and wife appeal.

The appellants assign as error the following:

(a) improper argument to the jury by the attorney for the United States,

(b) admission of evidence concerning the performance of an abortion on Hazel Queenan,

(c) admission of evidence concerning statements made by Eva W. Ladrey out of the presence of Henry M. Ladrey,

(d) refusal to direct a verdict of not guilty as to Henry M. Ladrey at the close of the evidence for the United States, and at the conclusion of all the evidence.

Obviously, the alleged errors summarized above as (c) and (d) have to do only with the case against Henry M. Ladrey. The appellant, Eva W. Ladrey, necessarily must rely upon alleged errors (a) and (b).

Hazel Queenan lived at 2310 Georgia Avenue, N. W., which is near the corner of Georgia Avenue and Trumbull Street in the District of Columbia. She testified that on the evening of January 6th, 1944, defendant Eva Ladrey came to her house and asked her if she was ready. Hazel Queenan replied that she was not as she had to attend a meeting that evening. Eva Ladrey then stated that she would return the following evening. In the meantime Hazel Queenan communicated with Sergeant Scott of the Metropolitan Police Department and on the evening of the 7th, when Eva Ladrey returned, police sergeants Scott and Crooke were concealed in the house where they could hear what was said in the front room.

Eva Ladrey appeared, pursuant to the appointment, and talked with Hazel Queenan in the front room within the hearing of the officers. Witnesses for the government said she told Hazel Dr. Ladrey had sent her, and that he wanted her to make arrangements to drop the charges which had been entered against him as a result of the abortion; that she would pay her $100 then and, after she had left, they would give her another $100 plus the $60 which she had paid as the fee for the operation. Eva opened her pocketbook and displayed an envelope which she said contained $100.

[1] "§ 22—701 [6:134]. Whoever promises, offers, or gives, or causes or procures to be promised, offered, or given, any money or other thing of value, or makes or tenders any contract, undertaking, obligation, credit, or security for the payment of money, or for the delivery or conveyance of anything of value, to any executive, judicial, or other officer, or to any person acting in any official function, or to any juror or witness, with intent to influence the decision, action, verdict, or evidence of any such person on any question, matter, cause, or proceeding or with intent to influence him to commit or aid in committing, or to collude in or allow any fraud, or make any opportunity for the commission of any fraud, shall be fined not more than five hundred dollars, or be imprisoned not more than three years, or both. (Mar. 3, 1901, 31 Stat. 1330, ch. 854, § 861.)"

The two officers testified that they then entered the room and one asked Eva her name, to which she responded that she was Mrs. Wilkins. The officer said, "Now, Dr. Ladrey sent you up here, is that right, to make arrangements for this girl to drop the case?" She answered, "That is right." The officer said, "Well, I heard you offer her $60 and expenses to go away if she would drop the case, is that right?" She answered, "Yes." Thereupon the police placed Eva under arrest but, before taking her to the station, decided to look around in the vicinity to see if anybody was there who had brought Eva to the place. As they started to the nearby corner of 6th and Trumbull Streets, Eva said, "Well, I will tell you, I am Mrs. Ladrey. Dr. Ladrey is waiting at 6th and Trumbull for me." They proceeded to that corner and found Dr. Ladrey standing near an automobile. One of the officers informed him of his wife's statement that he had sent her there to offer the girl money to drop the charge, and asked if that were true. Ladrey replied, "Yes, I did bring her up here. I didn't know what she was going to do and I didn't know where she was going." At the time of her arrest Eva's purse contained an envelope in which were bills aggregating $100.

At the trial Ladrey denied that he took his wife to a point near the Queenan home or that he had told the officers he had done so. On the contrary, he said that he had not seen his wife since early morning. He declared that he had never discussed the abortion case with Eva, but there is evidence that his wife knew Hazel Queenan had paid the doctor $60 for the operation. Other circumstances appeared which we think it unnecessary to summarize.

■ Alleged error (a)—improper argument to the jury by the prosecuting attorney. We have carefully examined the transcript of that part of the argument of the assistant United States attorney of which complaint is made. The prosecutor did no more than to suggest to the jury that one who has theretofore borne a good reputation may commit a crime; that is, that proof of a good reputation is not a complete defense. We see no impropriety in that argument.

■ Alleged error (b)—admission of evidence concerning the performance of an abortion on Hazel Queenan. The appellants urge that it was improper and prejudicial for the court to permit Hazel Queenan to testify concerning the illegal operation she said Ladrey performed on her. They say that this was evidence of an offense for which they were not on trial. In the case before us, which is the bribery charge, it was proper to admit evidence of the attempt to bribe, and, as well, evidence tending to show that Hazel Queenan was a material witness in the abortion case. Her testimony concerning the operation was limited to statements to the effect that she was the person upon whom the operation had been performed, and statements showing the nature of the operation. This was no more than the bare necessity of the case for the prosecution required. Consequently it was not error to receive it.

As the errors assigned which concern the conviction of Eva Ladrey are without substance, the judgment against her is affirmed.

■ Alleged error (c)—admission of evidence concerning statements made by Eva W. Ladrey out of the presence of Dr. Ladrey. The appellants contend that evidence concerning the statements made to Hazel Queenan by Eva Ladrey were not admissible against Henry M. Ladrey because they were not made in his presence. Those statements include the offer of the bribe to Hazel Queenan, the actual overt act. Consequently, if evidence of these statements was not admissible against Henry M. Ladrey, he was entitled to a directed verdict in his favor.

The officers testified that Ladrey said he had let his wife out of his car at Georgia Avenue and Trumbull Street but that he did not know where she was going or what she was going to do. On the witness stand he denied having made that statement and said he had not seen Eva since early morning. In response to the question "Do you know how she happened to bring the officers around to 6th and Trumbull Streets when she was arrested?" he said, "I don't— if she brought them there." Yet he later testified to having arranged to meet his

wife that evening at approximately that spot.

The jurors had a right to believe the statements of the officers as to what Ladrey said to them, and they could well have regarded as incredible the declaration of a man who lived in Alexandria, Virginia, that he had let his wife out of the car in the darkness of a winter evening at Georgia Avenue and Trumbull Street, some miles from their residence, but that he did not know where she was going or what she was going to do.

If the jurors were satisfied that false statements were made by Ladrey, they were justified in regarding those statements as in themselves tending to show guilt[2] and the existence of a conspiracy. The evidence that Ladrey took his wife to a point near the scene of her attempt at bribery, that after her arrest he was found with his car parked at a nearby corner, that he made a statement so incredible as to be prima facie false, and conflicting statements as well, together with the fact that Ladrey had a strong motive to eliminate the Queenan woman as a witness,[3] tended to show there was a secret combination or conspiracy between Ladrey and his wife, it being immaterial that the indictment did not specifically charge that they had conspired.[4]

■ Since facts and circumstances, other than the statements and acts of Eva Ladrey, were shown from which it could be concluded that a conspiracy in fact existed, the evidence of Hazel Queenan and the police sergeants concerning the declarations of Eva Ladrey was admissible against Henry M. Ladrey under the general rule.[5]

■ Alleged error (d)—refusal to direct a verdict of not guilty as to Henry M. Ladrey at the close of the evidence for the United States, and at the conclusion of all the evidence. By introducing evidence in his own behalf, Henry M. Ladrey waived the right to insist upon his motion for a directed verdict of not guilty at the end of the evidence for the United States.[6] His contention that a verdict in his favor should have been directed at the conclusion of all the evidence must be denied. As we have pointed out in discussing alleged error (c), the proof was sufficient to justify the conclusion that a conspiracy existed. Eva Ladrey's declarations and acts at the Queenan house, as well as her statements immediately after her arrest, were therefore competent against her husband.

■ With those declarations and acts included in the evidence against Ladrey, there was enough proof to justify submitting the case against him to the jury, and to sustain the verdict of guilty which was found. Our Code obliterates the former distinction between principals and accessories before the facts.[7] In the case of Maxey v. United States,[8] this court dealt with a factual situation not unlike that present here. In that case the accessory was not personally present inciting the principal to or aiding in the performance of the criminal act. All that was necessary, we said in that

[2] Wilson v. United States, 162 U.S. 613, 620, 16 S.Ct. 895, 40 L.Ed. 1090.

[3] Motive becomes a strong circumstance for consideration where the defendant is held as an accessory. Shiflett v. Commonwealth, 151 Va. 556, 145 S.E. 336.

[4] St. Clair v. United States, 154 U.S. 134, 149, 14 S.Ct. 1002, 38 L.Ed. 936.

[5] American Fur Co. v. United States, 2 Pet. 358, 365, 7 L.Ed. 450. In this case the Supreme Court said: "Where two or more persons are associated together for the same illegal purpose, any act or declaration of one of the parties, in reference to the common object, and forming a part of the res gestæ, may be given in evidence against the others." See also St. Clair v. United States, supra; Wiborg v. United States, 163 U.S. 632, 16 S.Ct. 1127, 1197, 41 L.Ed. 289.

[6] Perovich v. United States, 205 U.S. 86, 27 S.Ct. 456, 51 L.Ed. 722; Murray v. United States, 53 App.D.C. 119, 126, 288 F. 1008.

[7] Title 22, § 105, District of Columbia Code (1940).

"§ 22—105 [6:5]. In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be. (Mar. 3, 1901, 31 Stat. 1337, ch. 854, § 908.)"

[8] 30 App.D.C. 63.

case, was to prove facts and circumstances from which it might be inferred, with sufficient certainty, that the accessory abetted the performance of the criminal act in such a way as to constitute him a principal offender under the section of the Code just cited. One who procures, commands, advises, instigates or incites the commission of an offense, though not personally present at its commission, is, by the common law, an accessory before the fact. The Code provision makes all such persons principals.

As we have seen, there was sufficient evidence to justify the jury's conclusion that Ladrey was an accessory before the fact. He was therefore properly found guilty as a principal.

Affirmed.