**UNITED STATES of America,**
**Appellee,**

v.

**William Edward FINNERTY, Appellant.**

**No. 72–1450.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 14, 1972.

Decided Nov. 29, 1972.

John E. V. Pieski, Scranton, Pa., for appellant.

Laurence M. Kelly, Asst. U. S. Atty., Scranton, Pa., for appellee.

Before McLAUGHLIN, ADAMS and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

This appeal centers on the question of whether or not sufficient evidence was presented at trial to sustain appellant's conviction, which was decided solely on Count II of an indictment. That indictment contained three counts pertaining to the utterance of counterfeit $100 bills at two locations situated a very short distance from each other, within a time-span of approximately one-half hour on December 19, 1970. The first count alleged that appellant Finnerty had wilfully, knowingly, and with intent to defraud uttered a counterfeit $100 Federal Reserve Note in violation of 18 U.S.C. § 472. This transaction allegedly took place at the Mertz store through the purchase of some teflon pots which were paid for with a bogus bill. There was approximately $80 in change from this transaction. The trial judge dismissed Count I on the ground that there was insufficient evidence to adequately identify appellant as the one who had passed this bill. The court instructed the jury that evidence from the Mertz store transaction was not to be included when considering the other counts of the indictment. Although the trial judge stated that testimony concerning the Mertz store transaction was not to be considered for "any purpose," not even to show knowledge and intent when examining the second and third counts, obviously he meant to note that evidence pertaining to guilt in Count I, was not to be passed upon by the jury in deciding Counts II and III, since Count I had already been dismissed. The pertinent law is basically that although the government would be precluded in a *subsequent* trial from introducing evidence that had been the *basis* of a prior charge on which the defendant had been acquitted, United States v. Pappas, 445 F.2d 1194 (3 Cir. 1971), cert. den. 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368, this doctrine "(res judicata) can have no application to separate counts tried together under a single indictment," United States v. King, 373 F.2d 813, 815 (2 Cir. 1967), cert. den. 389 U.S. 881, 88 S.Ct. 120, 19 L.Ed. 2d 174; United States v. Maybury, 274 F.2d 8<9 (2 Cir. 1960). Acquittal on Count I did not decide the question of Finnerty's knowledge and intent on Count II. Beyond doubt it is permissible to use such evidence under certain circumstances and these will be discussed later.

Count II dealt with the second transaction which was the attempted

purchase of a bathrobe at the Beverly store, a short distance from the Mertz store. This alleged that appellant Finnerty possessed the counterfeit note and went to the Beverly store with intent to wilfully and knowingly defraud by passing a falsely made obligation of the United States in violation of 18 U.S.C. § 472. Count III was dismissed, basically because it was included in the other two counts, and was not a separate offense. It was at the Beverly store that appellant was stalled by the sales people and taken into custody by police officers to whose attention the bogus bill had been brought by suspicious Beverly employees. Admittedly appellant did attempt to pass a $100 bill at said Beverly Shop and it has been determined that this bill was counterfeit. It becomes necessary then to prove only that appellant had knowledge that the bill in his possession was counterfeit, which would demonstrate intent and wilfulness on the part of appellant and confirm his guilt on this count. A necessary element of the crime before us is knowledge on the part of defendant that the note was counterfeit, United States v. Meisch, 370 F.2d 768 at 771 (3 Cir. 1966). Knowledge, in this instance, is to have wilful intent or reckless disregard of the truth inherent in the circumstances. It is also the law that "the mere passing of these counterfeit bills is not sufficient to show knowledge on the part of the defendant that they were counterfeit." United States v. Litberg, 175 F.2d 20, 23 (7 Cir. 1949). However, United States v. Carlson, 359 F.2d 592 (3 Cir. 1966), while conceding this point, soundly held that nevertheless, "the question of guilty knowledge and especially the intent to defraud * * * may be shown by other than direct evidence." Definitely the jury is given the right to scrutinize the entire situation and circumstances at or near the time when the actual passing of the counterfeit notes was being accomplished, to determine the question of knowledge. Therefore anything concerning the passing of counterfeit $100 bills on that day in the particular Scranton area would be relevant to that probing action. More specifically, the fact of the passing of an identical bill, within the same half hour or so and only a few blocks away must be available to the scrutiny of jury (especially since not precluded by United States v. King, supra) as well as all the facts from the Beverly store itself, in order to resolve the problem of knowledge. Evidence concerning the fact that someone passed a counterfeit bill at the Mertz store on the same day, and not mentioning appellant's presence at the Mertz store, is relevant, necessary, and admissible to reach a proper determination under Count II of this indictment.

The undisputed facts are that on December 19, 1971, appellant Finnerty attempted to pass a counterfeit $100 bill at the Beverly store by purchasing a woman's bathrobe. One of the employees had seen Finnerty standing outside the store, thought him suspicious, and so had his $100 bill, which was offered in payment for a bathrobe, examined during a short period while Finnerty was kept in the store under the pretense of waiting for change. In the Beverly store, appellant talked briefly with other store employees. He mentioned to one of them that this robe was for his girl friend as a present; that he had been given the bill as payment for playing in a band; and that he was from New Jersey. A short time earlier on that day at another nearby place, the Mertz store, someone, of a description very similar to that of appellant, passed an exact duplicate and counterfeit $100 bill which even had the same serial number as the one at the Beverly store. The person in passing that one mentioned that he was from New Jersey where he played in a band and that this was the way in which he had obtained the bill. There is no mention of a nervous attitude on the part of the individual at the Mertz store, and it was also stated that appellant showed little nervousness at the Beverly store—at least not until he had been forced to stand around awaiting his change.

The description of the man in the Mertz store, though found to be inconclusive as to a hundred per cent Mertz identification, did fit appellant Finnerty's appearance on that day to a far more than casual degree. The jeans and jacket, hair style and color, height and body build all were the same or closely similar to that of Finnerty when he was picked up at the Beverly store.

Appellant presents a story which asserts that another individual passed the first counterfeit bill at the Mertz store. Supposedly that person knew that Finnerty was going to buy a robe, had happened to come to Scranton in the middle of winter on a casual ride with appellant, had played in a band, and had supplied appellant with the counterfeit bill as payment for a marijuana sale between Finnerty and this person known only as "Tom".

Appellant cites United States v. Litberg, 175 F.2d 20 (7 Cir. 1949) which relies on the rule that "while the trier of facts is entitled to draw all reasonable inferences from the circumstances in proof, *a court of review is charged with the responsibility of determining the reasonableness of such inferences*." (Emphasis supplied). It went on to decide, and appellant asserts its applicability in this litigation, that "an inference may not properly be relied upon in support of an essential allegation if an opposite inference may be drawn with *equal* consistency from the circumstances in proof." (Emphasis supplied). Appellant would have it that this is that sort of "equal inference" situation and argues accordingly.

Appellant's singular testimony in his own behalf does no more than create a tale purporting to offer an equally possible "other inference". Finnerty says that he had known this "Tom" for a couple of months, yet didn't know his last name. He took about a three hour ride from southern New Jersey with "Tom" in the middle of winter, which happened to end up in Scranton, Pa., yet he didn't know where or how to find "Tom" again. He had carried out an illegal business transaction with "Tom" concerning the sale of marijuana but never attempted to discover anything about "Tom's" background. In light of these peculiar circumstances, appellant would have us believe that he did tell "Tom", while riding to Scranton, that he intended to buy a bathrobe for his mother; that while he left the car to obtain the robe, "Tom" went to the Mertz shop and passed another bogus $100 bill and mentioned to that clerk that he later intended to buy a robe for his girl friend. At this Mertz store, however, the passer of the bogus bill also said that he played in a band which is what even appellant thought "Tom" actually did. It seems highly inconsistent that if this "Tom" were attempting to cover up or confuse his identity by mention of the robe, that he would thereafter mention a fact accurate about himself. That is, that he played in a band. Furthermore, Finnerty at the Beverly store, claimed that he played in a band as an explanation of why he possessed the $100 bill, and was there attempting to buy a bathrobe with the bill. The identity of these two factors in the separate transactions, plus the inconsistencies in the far out explanation given for them by Finnerty, casts serious doubt on his testimony. Furthermore, Finnerty's vague description of "Tom" seems to have been well calculated. He described him to have been of average height, weight, and build, and as having longish brown hair and some form of facial hair. This could also be used to fit appellant and numerous other people. Then appellant relies on some very slight variations in the description testimony of all the witnesses involved, as he endeavors to show that there were two different individuals at the two stores. It cannot be denied that the transactions had taken place about one and a half years prior to the trial and did result in some inconsistencies in witness descriptions as might be expected. In light of these vague and contradicto-

ry areas of appellant's story, it is impossible to give credence to it as a true account.

The only evidence in support of appellant's proclaimed theory is a statement by a Michael Hunter, appellant's close friend, that he had seen this person known as "Tom" give a $100 bill to Finnerty in payment for some marijuana.

Other factors calling for examination were that appellant acknowledged (Tr. p. 83) that he had pleaded guilty twice in the past to charges of obtaining property by false pretenses. It is sound decisional law that "evidence of prior fraudulent transactions are * * * admissible, not to prove the conspiracy charged, but to show some other material fact such as an absence of mistake, motive, opportunity, intent, preparation, plan or knowledge." United States v. Jones, 425 F.2d 1048, 1051 (9 Cir. 1970), cert. den. 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51. For testimony of prior acts to be acceptable some relevancy must exist between the said prior acts and those charged. Those convictions are relevant in this instance since each offense is based on obtaining something by false pretenses. This was another solid factor for the jury in weighing the inference pertinent to guilt and innocence.

Appellant points out that he possessed neither pots and pans not other money and claims this to be indicative of the fact that he was not the person who passed the $100 bill at the Mertz store. That result is most inconclusive since appellant could easily have disposed of the goods between the two transactions and probably would have. By such actions, he might well have projected the idea at the Beverly store that he had to break the second $100 bill for lack of other funds. These are the elements that the jury had open with regard to appellant's guilty knowledge.

To propose that said evidence was insufficient to allow the jury to decide that Finnerty knew the $100 bill to be counterfeit, or that his story was equally believable and so had met the Litberg standard, would brashly presume upon the gullibility of this court and the jury.

■ The weight of the overall circumstances gives strong support to the finding of the jury on this appeal. We are satisfied that there was enough legitimate evidence before the jury on the whole case to warrant its finding that Finnerty knew that the second bill was counterfeit as he tried to pass it in the Beverly store.

The judgment of the district court will be affirmed.

ADAMS, Circuit Judge (concurring).

A divergent view of which portions of the evidence produced in this case may be used to support the conviction, compels me to a separate opinion, concurring in affirming the conviction, differing on the basis.

Appellant, Finnerty, was tried on an indictment charging two counts of uttering counterfeit $100 Federal Reserve Notes in violation of 18 U.S.C. § 472, and one count of possessing counterfeit notes. Essential to a conviction under 18 U.S.C. § 472 is proof that the accused passed the notes with intent to defraud and knowledge of their falsity.[1]

The incidents from which this indictment arose occurred in Scranton on December 19, 1970. Within approximately an hour, two counterfeit bills were proffered for payment of purchases at two neighboring retailers, the Mertz Store and the Beverly Shop. It is upon these two transactions that Count I and Count II rest.[2]

At the close of the prosecution's case, the defendant moved for directed verdicts of acquittal on each count. Proper identification linking Finnerty to the Mertz utterance being lacking, the trial judge granted the directed verdict as to Count I, but denied the request as to the

1. *E. g.*, United States v. Meisch, 370 F.2d 768, 770 n. 1 (3d Cir. 1966).

2. The third count, charging possession, was dismissed at the close of the trial.

Beverly Shop transaction, Count II. The identity of Finnerty as the passer of the bill at the Beverly Shop, and the bogus nature of the bill being conclusively established, the only issue remaining was whether Finnerty knew that the note was false when he attempted to make his Beverly Shop purchase.

After granting Finnerty's motion for acquittal on Count I, the trial judge unequivocally instructed the jury that they were "not to consider for any purpose any testimony concerning what occurred at the Mertz Store." Without debating whether the dismissal of Count I required such a total exclusion of that evidence from the case, such evidence was, by his instruction, excluded. Thus, the question that must be answered on this appeal becomes simply, was there a sufficient quantum of evidence remaining at the close of the trial to permit a finding of knowledge,[3] looking only to that evidence involving the transaction at the Beverly Store.

The probative evidence from which the inference of knowledge may be drawn is not overwhelming. Nevertheless, the question must be answered in the affirmative and, therefore, the judgment sustained.

In an appeal from a conviction, the findings of a jury are to be viewed in a light most favorable to the prosecution in order to sustain the verdict. United States v. DeCavalcante, 440 F.2d 1264, 1273 (3d Cir. 1971); United States v. Anderson, 409 F.2d 836, 837 n. 2 (3d Cir. 1969). Here the jury found Finnerty guilty on Count II, by implication deciding that he had the requisite knowledge. Examining the record with the presumption stated above, limiting the examination to the evidence not removed from the case by the trial judge's instruction, sufficient evidence can be found to support the jury's verdict in this case.[4]

Therefore, I concur in the result reached, and would affirm Finnerty's conviction.

GIBBONS, Circuit Judge (dissenting).

Appellant Finnerty was indicted on three counts for violations of the counterfeiting statute. Count I charged that on December 19, 1970, in violation of 18 U.S.C. § 472, Finnerty, with intent to defraud, wilfully and knowingly uttered a counterfeit $100 Federal Reserve Note at the Mertz Outlet Store, Scranton, Pennsylvania. Count II charged that on the same date Finnerty, in violation of 18 U.S.C. § 472, with intent to defraud, wilfully and knowingly attempted to utter a counterfeit $100 Federal Reserve Note at the Beverly Shop, Scranton, Pennsylvania. Count III charged possession of a counterfeit note. The district court dismissed Count III because it was an offense included in the other two counts.

In the Government's case several witnesses from the Mertz Outlet Store (Count I) established that on December 19, 1970, a counterfeit $100 Federal Reserve Note was passed at the store by a young man who said he wanted to purchase a Christmas present for his mother. He was described as wearing what in 1970 was a fairly common youth peer group uniform, dungarees, boots and a short denim jacket. He was hirsute. Of the four witnesses from the Mertz Outlet Store, only one, Maxine Kaplan, the clerk who waited on the man who passed the counterfeit note, identified

---

3. Knowledge of the counterfeit nature of the money can seldom be proven by direct evidence. Thus, circumstantial evidence is generally relied upon to provide a basis from which knowledge may be inferred. United States v. Carlson, 359 F.2d 592, 597 (3d Cir.) cert. denied, 385 U.S. 879, 87 S.Ct. 161, 17 L.Ed.2d 106 (1966).

4. A review of the testimony of defendant, Finnerty, reveals inconsistencies, previous lies, and past convictions for crimes of dishonesty, indicative perhaps, of a proclivity towards false dealings. In these actions and words of the defendant are sufficient bases on which the jury could find that Finnerty knew that the bill he attempted to pass was counterfeit.

that person. She stepped down from the witness stand and positively identified someone other than Finnerty. Thus in the Government's case the only testimony identifying the passer of the counterfeit note at the Mertz Outlet Store was that he was someone other than Finnerty.

Finnerty was positively identified as the person who passed the counterfeit note at the Beverly Shop on the same day. As I will develop hereafter, the evidence of his knowledge and wilfulness in the Beverly Store transaction, if one looks at the testimony concerning that transaction alone, is not sufficient to sustain conviction on Count II. The majority opinion sustains that conviction, however, by finding evidence of knowledge and wilfulness in the testimony about the Mertz transaction and in the defense testimony. But the district court properly granted a motion for judgment of acquittal on Count I because the Government's proofs established that someone else passed the counterfeit note at the Mertz store. The court then charged the jury:

"Now, if you will recall, Count One charged the defendant with intent to defraud; wilfully and knowingly passing and uttering a $100.00 counterfeit note at Mirtz [sic] Outlet Store, 410 Lackawanna Avenue. Count Two charges the same crime as to the Beverly Shop at 424 Lackawanna Avenue, and Count Three charges the defendant with intent to defraud, wilfully and knowingly, and having in his possession falsely made or counterfeit obligations. Now, Members of the Jury, defense counsel has just made a motion for a directed verdict of acquittal as to Count One and I have granted that motion, the reason being that there was no identification of this defendant in the Mirtz [sic] store. Any testimony as to identification was that of Maxine Kaplan, and she identified someone who is not the defendant as the person who was in the store. Now, it is true there is testimony of similarity of appearance and conversation and general description of the person in the Mirtz [sic] store, but I instruct you that it fails totally in the proof that is necessary to show the commission of the crime, and, consequently, you are not to consider Count One in your deliberations, and on Count Three, consequently, we are limiting the possession charge to the one counterfeit bill that was allegedly brought into the Beverly store. We are not concerned with the Mirtz [sic] store at all, and I must instruct you with great emphasis that we have allowed evidence into the case as to what happened at the Mirtz [sic] store because the Government thought they would have sufficient proof to justify submitting it to the jury. I have concluded otherwise. So you are not to consider for any purpose any testimony concerning what occurred at the Mirtz [sic] store. It would be improper for you to do so and in violation of your oath if you allow your decision on Count Two and Count Three to be influenced to any degree or in any manner by testimony concerning the occurrence at the Mirtz [sic] store."

(Tr. at 80–81).

The majority opinion, by assuming that the jury could, in finding the necessary knowledge and intent, consider the Mertz Outlet Store testimony, assumes that the jury was free to disregard the court's instruction and substitute its own judgment as to what evidence was admissible on Count II. This, presumably, the jury was not free to do.

We cannot, of course, review the district court's grant of a motion for judgment of acquittal on Count I. We can, however, review the trial court's denial of that motion on Count II.

The proof with respect to the Beverly Shop transaction, at the end of the Government's case, consisted of the testimony of Linda Capozza, a salesgirl; Sandra Walsh, a salesgirl; Betty Miles, head cashier; Josephine Lahr, a bookkeeper; James Carter, a supervisor of some sort in the store; and three offi-

cers of the Scranton Police Department who participated in Finnerty's apprehension at the scene.[1] The only thing significant about the testimony of the Scranton police officers was that when they arrived at the Beverly Shop, having been summoned by Mr. Carter, Finnerty was entirely cooperative, voluntarily accompanied them to the police station, and gave them a statement as to where he obtained the counterfeit note. Miss Capozza, one of the salesclerks, testified that when others in the store, becoming suspicious of the note, directed her to detain Finnerty, she did so by asking him to wait while she got a free gift box of candles, and by engaging him in conversation in which he disclosed he was from New Jersey and played in a band. When he had been kept waiting for fifteen minutes, Finnerty asked Miss Lahr: "Where's that girl who waited on me? I want my package." (Tr. at 30). He was told he would have to wait, and he did so. Miss Walsh, who took the note from Miss Capozza to the cashier in the main office of the store, returned without change. She advised Finnerty he would have to wait for change. She was asked:

"Q   What did this person say?

A   He acted very calmly and said he'd wait." (Tr. at 35).

Miss Miles, who received the bill from Miss Walsh, was about to make change when Mr. Carter came in and said to her that she had better check the note "that the possessor of the bill looked suspicious." (Tr. at 38). She sent Mr. Carter with the note to the head bookkeeper. Finnerty came over briefly to ask Miss Miles if he could have his bill or his package, but she "did not get a look at him." (Tr. at 39). Eventually Mr. Carter was sent for a policeman. Miss Lahr testified that after Finnerty had been waiting for a considerable time while the salespeople were stalling him, he said: "Either give me my money or

give me my merchandise." He also said, according to Miss Lahr:

"'Well, can I go down . . . .' and I think he said his brother or somebody was supposed to be in the car waiting, and he said, 'I'll go down and tell him I'm being delayed and I'll be right back.'" (Tr. at 45).

At that point Mr. Carter arrived with the police.

Mr. Carter had no conversation with Finnerty. He testified that he observed Finnerty outside the store. His testimony about Finnerty's "suspicious" appearance is as follows:

"Q   What was this person doing?

A   Well, in my opinion the person looked very suspicious because of the way he carried himself by walking by the store and back by the store again, and just something gave me this feeling that something was up, and I really didn't know what was coming up.

Q   Was this person looking in the window?

A   Yes.   Not directly but like he would walk past the store and look in and all of a sudden come back and look in again and back. I was standing in the front and it seemed kind of strange to me." (Tr. at 50).

Mr. Carter could not or at least did not elaborate the reasons for his opinion that Finnerty looked suspicious. There was no evidence that when Finnerty was taken into custody he had any other counterfeit notes, any change from the note cashed at the Mertz store, or any merchandise from the Mertz transaction, which had taken place prior to the Beverly transaction. Thus if the events at the Mertz store cannot be connected to Finnerty, the only evidence tending to establish that he knew the bill was counterfeit was Mr. Carter's opinion that he looked "suspicious", and Miss Lahr's and

---

[1]   Other witnesses established the chain of possession of the counterfeit note after Finnerty's arrest, his identification from photographs as the person apprehended, and the fact that the note was a counterfeit.

Miss Miles' testimony that after having been delayed for over fifteen minutes by various subterfuges he asked for his money or his merchandise but did not leave the shop.

Mere passing of the counterfeit note is insufficient for a conviction under 18 U.S.C. § 472. Proof of guilty knowledge is essential for conviction. *E. g.*, Baender v. Barnett, 255 U.S. 224, 41 S.Ct. 271, 65 L.Ed. 597 (1921); Miller v. United States, 392 F.2d 790, 792 (10th Cir. 1968); United States v. Meisch, 370 F.2d 768, 771 (3d Cir. 1966); United States v. Litberg, 175 F.2d 20, 22 (7th Cir. 1949). There is no direct evidence in the Government's case that Finnerty knew the Beverly Shop note was counterfeit. Putting aside the evidence about the Mertz transaction there is no circumstantial evidence tending to show such knowledge beyond a reasonable doubt. *See* United States v. Blair, 456 F.2d 514, 517 (3d Cir. 1972). At the close of the Government's case the only evidence relating to the Beverly transaction which was in the slightest way indicative of guilty knowledge was Mr. Carter's conclusion that Finnerty looked "suspicious". This was not enough. The court should have granted the motion for judgment of acquittal on Count II on the basis of its conclusion that evidence of the Mertz transaction had not been connected to Finnerty.

The court did not do so, however, and Finnerty elected to put in a defense. By doing so, according to the conventional federal court formulation, Finnerty "waived" his objections to the court's denial of his motion to acquit on Count II. United States v. Calderon, 348 U.S. 160, 164 n. 1, 75 S.Ct. 186, 99 L.Ed. 202 (1954). *See* McGautha v. California, 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L. Ed.2d 711 (1971). *Cf.* American Bar Association Project on Standards for Criminal Justice, Trial by Jury, 107–108 (Approved Draft 1968). *But see* Comment, The Motion for Acquittal: A Neglected Safeguard, 70 Yale L.J. 1151 (1961); *Cf.* Cephus v. United States, 117 U.S.App.D.C. 15, 324 F.2d 893 (1963). Since the Supreme Court has expressed approval of the *Calderon* rule as recently as 1971 it is proper for the majority to refer, as it does, to portions of the defense case for evidence to bolster the Government's proof of Finnerty's guilty knowledge. The *Calderon* rule is unfortunate, for as one commentator has observed:

> "As long as there is no effective appellate review of motions for acquittal, the inevitable cautionary tendency of trial judges will result in continued denial of relief at this stage of the trial and render the motion meaningless. It is doubtful whether any measure short of outright abolition of the waiver doctrine will permit effective review and will reverse this tendency." 8 J. Moore, Federal Practice ¶ 29.05, at 29–18 (2d ed. Robert M. Cipes 1972). (Footnote omitted).

This case is a good illustration of the cautionary tendency of trial judges to which the commentator referred. The district court, Solomon like, halved the problem by taking on itself the decision that the Government must be bound by its identification evidence on Count I, but refusing to take on itself the decision that Mr. Carter's opinion that Finnerty looked suspicious was insufficient to establish guilty knowledge.

If the majority, applying the *Calderon* rule, merely looked at the defense evidence to bolster the Government's proof of guilty knowledge on Count II, I would be unhappy but not dissentious. But as the majority opinion makes clear, even the defense evidence supporting guilty knowledge can only be related to Count II by reference to the evidence on the Mertz transaction (Count I). Under the waiver rule the defense proof may lay the foundation for otherwise inadmissible evidence in the Government's case, Ladrey v. United States, 81 U.S.App. D.C. 127, 155 F.2d 417 (1946), or provide corroboration for essential elements of the Government's case, United States v. Goldstein, 168 F.2d 666 (2d Cir. 1948); Ercoli v. United States, 76 U.S. App.D.C. 360, 131 F.2d 354 (1942). Here the majority opinion goes further, however, for nothing in the defense

proof served to supply the essential defect in the link between the Mertz transaction and Finnerty—the identification of the Mertz culprit. The district court recognized as much, for it never departed from its charge to the jury that the Mertz transaction could not be considered for any purpose. But on appeal, by piecing together evidence in the Government's case respecting that transaction, evidence in the Government's case on Count II and evidence from the defense case, the majority finds enough evidence not only to sustain the denial of the motion for judgment of acquittal, but also to sustain a jury verdict.

If the jury acted upon the Mertz transaction evidence, upon which the majority relies, it disobeyed the court's instructions. If it followed the court's instructions, it had an insufficient evidentiary basis for its verdict; and that verdict is for this reason suspect. Moreover, even if under *Calderon* the evidence in the defense case were found to be sufficient to cure the defects in proof of the Government's case on Count II, the verdict could not be sustained, for the court instructed the jury to disregard the Mertz evidence for any purpose. Thus the jury was instructed to disregard the identification of the Mertz perpetrator as someone other than Finnerty, even for the purpose of establishing a reasonable doubt as to his guilty knowledge on Count II. Under these circumstances one would think that an appellate court could go no further than to order a new trial. A new trial would be proper, however, only if by application of the *Calderon* waiver rule the insufficiency of the evidence at the end of the Government's case was cured by the defense evidence. Here it was not. The Government did not contend at the end of its case that Count II could be sustained without reference to the Mertz evidence. (Tr. at 75). It does not contend in its brief on appeal that Count II can be sustained without reference to the Mertz evidence. I would simply reverse.