**2017 UT App 194**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CORY R. PATTERSON,
Appellant.

Opinion
No. 20150791-CA
Filed October 19, 2017

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 141403037

Dustin M. Parmley, Attorney for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and JILL M. POHLMAN
concurred.

CHRISTIANSEN, Judge:

¶1      Defendant Cory R. Patterson challenges his conviction on
one count of object rape, arguing that the evidence was
insufficient to support the jury's verdict. He does not challenge
his convictions on two counts of forcible sexual abuse, stemming
from the same incident. We conclude that the evidence adduced
at trial was sufficient for the jury to find every element of object
rape, and we therefore affirm.

¶2      When we review a challenge to the sufficiency of the
evidence, we review the evidence and all inferences that may
reasonably be drawn from it in the light most favorable to the
jury's verdict. *State v. Pullman*, 2013 UT App 168, ¶ 4, 306 P.3d

827. We will vacate the conviction only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime. *Id.*; *see also State v. Hamilton*, 827 P.2d 232, 236 (Utah 1992). To conduct this analysis, we first review the elements of the relevant statute. We then consider the evidence presented to the jury to determine whether evidence of every element of the crime was adduced at trial.

¶3     Defendant was charged with object rape. A person is guilty of object rape when the person, "without the victim's consent, causes the penetration, however slight, of the genital or anal opening of another person who is 14 years of age or older,[1] by any foreign object, substance, instrument, or device, including a part of the human body other than the mouth or genitals, with intent to cause substantial emotional or bodily pain to the victim or with the intent to arouse or gratify the sexual desire of any person." Utah Code Ann. § 76-5-402.2(1) (LexisNexis Supp. 2016). "Penetration" in this context means "entry between the outer folds of the labia." *State v. Simmons*, 759 P.2d 1152, 1154 (Utah 1988). On appeal, Defendant's sole claim is that the State did not present evidence that he caused such penetration.

¶4     To determine whether sufficient evidence was presented, we must scrutinize the testimony elicited at trial. And because we review evidence in the light most favorable to the jury's verdict, *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346, we rely primarily on Victim's account of what happened to her, which the jury apparently credited.

¶5     Victim met Defendant at their workplace; Defendant was 23 and Victim was 17. While working together, Defendant regaled her with stories of his military training and his plans to

---

1. A separate statute criminalizes object rape of a person younger than 14. *See* Utah Code Ann. § 76-5-402.3 (LexisNexis Supp. 2016).

get a concealed carry permit. Victim testified that, after their shifts, Defendant asked Victim if he could walk her to her car. When they got to her car, Defendant told Victim that he wanted to kiss her. He then kissed her for "about a couple minutes" before pushing her into the back seat of her car. Once inside the car, Defendant continued to talk to Victim, who was "start[ing] to get scared, frightened, and . . . was still unsure of what to do or how to act." Victim testified that she did not think about running away at that point, explaining, "[I]n the moment when it's so traumatic, you don't know what to do. You're not really in control of your body." She also testified that she was concerned about "what he said about the military [training] before and about his conceal[ed] carry permit." Defendant then resumed kissing Victim.

¶6     Victim testified that, after about five minutes, "[t]he kissing got more intimate, and then he undid my pants, and he put his hand down my pants and started touching my vagina and moving his hand around that area." Victim further testified, "[W]hen he started trying to put his fingers up my vagina I told him to stop, and he kept saying, 'No, no, it's okay. It's okay.'" Victim repeated her plea for Defendant to stop, and "he kind of moved his fingers back and just started touching around the area instead of putting his fingers up, instead of penetrating."

¶7     Defendant then opened his pants and "used [his] hand to grab my hand, and caress his penis and move it up and down." Victim testified that whenever she tried to let go, Defendant would "put[] my hand back onto his penis. After a while he noticed that I didn't want to do that; and after I told him to stop, he just noticed that. So he finished himself off. Then he had lifted up my shirt and moved my bra up and touched my breast."

¶8     At this point in Victim's testimony, the prosecutor asked Victim to provide more detail about the earlier touching. Specifically, the prosecutor asked Victim to "describe where on your vagina he touched." Victim testified, "He touched the general area. Then when he was trying to put his fingers up he

separated the labia" using "[j]ust one hand, his two fingers." Victim further testified, "It really hurt. I had never felt anything like that before."

¶9     The question before us is whether a reasonable jury, after hearing this testimony, could find beyond a reasonable doubt that Defendant caused "penetration, however slight, of [Victim's] genital . . . opening." *See* Utah Code Ann. § 76-5-402.2(1) (LexisNexis Supp. 2016). We therefore review the evidence in detail, bearing in mind that the evidence presented to the jury must speak to every element of the offenses charged to ensure that the jury's verdict does not rest on speculation:

> [N]otwithstanding the presumptions in favor of the jury's decision[,] this Court still has the right to review the sufficiency of the evidence to support the verdict. The fabric of evidence against the defendant must cover the gap between the presumption of innocence and the proof of guilt. In fulfillment of its duty to review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict, the reviewing court will stretch the evidentiary fabric as far as it will go. But this does not mean that the court can take a speculative leap across a remaining gap in order to sustain a verdict.

*State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94 (first alteration in original) (citation and internal quotation marks omitted). "Sex crimes are defined with great specificity and require concomitant specificity of proof." *State v. Pullman*, 2013 UT App 168, ¶ 14, 306 P.3d 827; *accord People v. Paz*, No. B265251, 2017 WL 1374701, at *9 (Cal. Ct. App. Apr. 14, 2017) (certified for partial publication at 217 Cal. Rptr. 3d 212) ("In all sex-crime cases requiring penetration, prosecutors must elicit precise and specific testimony to prove the required penetration beyond a reasonable doubt." (citing *Pullman*, 2013 UT App 168, ¶ 14)).

¶10    The Utah Supreme Court's decision in *State v. Simmons* is instructive to our analysis. *See generally* 759 P.2d 1152 (Utah 1988). There, the supreme court considered the crime of unlawful sexual intercourse which, like object rape, has "penetration" as an element. *Id.* at 1154. The supreme court held that a victim's testimony that the defendant "put the tip of his penis 'on' her labia" was insufficient to support conviction when the victim failed to "testify that [the defendant] put his penis between the outer folds of her labia." *Id.* (noting that the jury may have been confused by testimony regarding prior incidents where the defendant *did* "place his penis between [the victim's] outer labial folds" and "penetrated the vaginal canal").

¶11    Similarly, in *State v. Pullman*, this court vacated a defendant's conviction for sodomy on a child because the victim's testimony "describ[ing] a sexual act involving Pullman's penis and her buttocks" did not satisfy the statutory element of "touching the anus." 2013 UT App 168, ¶ 16 (emphasis, citation, and internal quotation marks omitted). This court explained that the victim's testimony that "Pullman 'tried to take [her] panties off and stick his dick into [her] butt' and that 'it hurt'" was "'sufficiently inconclusive . . . that reasonable minds must have entertained a reasonable doubt' as to whether Pullman's act involved the touching of her anus." *Id.* (alterations in original) (citation omitted).

¶12    Here, the testimony does not explicitly describe the challenged element of the offense—"penetration, however slight." *See* Utah Code Ann. § 76-5-402.2(1). Victim testified that Defendant was "trying to put his fingers up" her vagina until she repeated her plea for him to stop. Victim further testified that, at that point, Defendant "started touching around the area instead of putting his fingers up, instead of penetrating." And when asked by the prosecutor to "describe where on your vagina he touched," Victim responded that Defendant had touched "the general area" and that he "separated the labia" using "[j]ust one hand, his two fingers." But the State did not

elicit Victim's testimony as to whether Defendant's fingers actually penetrated between her labia, however slightly.[2]

¶13 Because Victim's testimony did not explicitly establish that Defendant penetrated Victim, we consider next whether the jury could have reasonably inferred that Defendant penetrated Victim. The State asserts that the jury could have inferred from her testimony that "Defendant's fingers entered, however slight[ly], between the outer folds of [Victim's] labia." (First alteration in original) (citation and internal quotation marks omitted). Defendant argues that such a finding amounted to speculation and was therefore not a reasonable inference.

¶14 The resolution of this issue turns on the difference between a permissible inference and impermissible speculation. "This is a difficult distinction for which a bright-line methodology is elusive." *Salt Lake City v. Carrera*, 2015 UT 73, ¶ 12, 358 P.3d 1067. "An inference is a conclusion reached by

---

2. We recognize that testifying about a sexual assault is traumatic for the victim. But the State has the burden of "proving by evidence every essential element" of the charged crime. *See Carella v. California*, 491 U.S. 263, 266 (1989) (per curiam); *see also In re Winship*, 397 U.S. 358, 364 (1970) (holding that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). We urge prosecutors to adduce specific testimony regarding each and every element of such crimes to ensure that a jury's guilty verdict rests not on speculation but on clear evidence sufficient to find beyond a reasonable doubt that the defendant committed the crime charged. *Cf. People v. Paz*, No. B265251, 2017 WL 1374701, at *9 (Cal. Ct. App. Apr. 14, 2017) (certified for partial publication at 217 Cal. Rptr. 3d 212) ("We caution prosecutors not to use vague, euphemistic language and to ask follow-up questions where necessary.").

considering other facts and deducing a logical consequence from them" whereas "speculation is the act or practice of theorizing about matters over which there is no certain knowledge." *Id.* (citation and internal quotation marks omitted). Thus, a jury's inference is reasonable "if there is an evidentiary foundation to draw and support the conclusion" but is impermissible speculation when "there is no underlying evidence to support the conclusion." *Id.* Put another way, "an inference may not properly be relied upon in support of an essential allegation if an opposite inference may be drawn with equal consistency from the circumstances in proof." *See United States v. Finnerty*, 470 F.2d 78, 81 (3d Cir. 1972) (emphasis, citation, and internal quotation marks omitted).

¶15 There is no question that penetration is an essential element of the crime of object rape; indeed, it is the critical element distinguishing object rape from forcible sexual abuse. *Compare* Utah Code Ann. § 76-5-402.2(1) (LexisNexis Supp. 2016), *with id.* § 76-5-404(1) (LexisNexis 2012). Therefore, we must consider whether the two scenarios Victim's testimony might have described—penetration or non-penetration—"may be drawn with equal consistency" from that testimony. *See Finnerty*, 470 F.2d at 81 (emphasis, citation, and internal quotation marks omitted).

¶16 Victim testified that Defendant attempted to penetrate her using two fingers to "separate[]" her labia. This might describe separation by insertion (penetration) or separation by stretching the skin adjacent to the labia (not penetration). Victim also testified that, after she repeatedly asked him to stop, Defendant "kind of moved his fingers back and just started touching around the area." Again, this might describe Defendant removing his fingers from Victim after penetrating her or Defendant pulling his hand away from her vagina and labia without having penetrated Victim. And Victim testified that, "[i]t really hurt. I had never felt anything like that before." Arguably, this testimony might describe physical pain from penetration or emotional trauma from Defendant's forcible

sexual abuse of Victim. Thus, each of these pieces of testimony may plausibly be interpreted as describing either a penetrative scenario or a non-penetrative scenario.

¶17 However, while Victim's testimony was susceptible to two interpretations, it was not *equally consistent* with both. *See Finnerty*, 470 F.2d at 81. When viewed as a whole, rather than examining each statement in artificial isolation, Victim's testimony more consistently described actual penetration than it did mere attempted penetration. For example, given their context, Victim's statements that "[i]t really hurt" and that she "had never felt anything like that before" seem more likely to relate to bodily pain than emotional injury. And such a description of pain suggests that Defendant's separation of Victim's labia was accomplished by digital penetration. This is especially true given Victim's testimony that it was when Defendant was "trying to put his fingers up," that he "separated the labia." Indeed, Defendant himself described penetration as a goal he was unable to accomplish rather than testifying that he had been trying to merely separate Victim's labia, as an objective in its own right:

> Q: Did you ever penetrate her vagina?
>
> A: I did not.
>
> Q: Was that because of the—what you've described as the tight quarters, or was there another reason?
>
> A: It was the tight quarters.

Thus Defendant's concession that he had been attempting to penetrate Victim casts doubt on the possible inference that he spread Victim's labia by stretching the skin around it rather than by penetrating it with his fingers. In other words, Defendant's admission as to his intent largely dispels the alternative possibility that he was, for some reason, merely trying to

separate Victim's labia, one from the other, by stretching the skin and without penetrating between them.

¶18 Victim's testimony that, after putting his hand into her pants and trying to penetrate her vagina, Defendant "kind of moved his fingers back and just started touching around the area" could mean that his fingers had been on Victim's labia or that his fingers had been between Victim's labia. But these interpretations are not equally consistent with the evidence adduced. Specifically, because Victim testified about the pain she suffered, the total evidentiary picture is more consistent with the interpretation that Defendant had penetrated Victim before "mov[ing] his fingers back."

¶19 Considering these pieces of testimony together, we cannot conclude that an inference of non-penetration "may be drawn with equal consistency" as an inference of penetration from the evidence adduced at trial. *See Finnerty*, 470 F.2d at 81 (emphasis, citation, and internal quotation marks omitted). Therefore, there was an evidentiary basis for the jury's adoption of one inference over the other. *See Carrera*, 2015 UT 73, ¶ 12. And because the jury's adoption rested on an evidentiary basis, we conclude that the jury made a reasonable inference rather than an impermissible speculation.

¶20 Affirmed.

————